BROWN, Judge.
Plaintiff, Charlie Howard, Jr., appeals from a judgment denying workers’ compensation benefits. The issue presented requires a determination of whether Georgia Pacific Corporation (Georgia Pacific) was his statutory employer. For the reasons expressed herein, we reverse and remand.
Louisiana’s workers’ compensation law subjects certain principal contractors to liability for compensation claims of the employees of their independent contractors or subcontractors. LSA-R.S. 23:1061. These principal contractors are commonly called statutory employers. The purpose of the statute is to prevent the avoidance of compensation responsibility by an employer who interposes an uninsured and impecunious contractor between himself and his employee. 13 W. Malone and H.A. Johnson, Louisiana Civil Law Treatise, “Workers’ Compensation” § 121 (1980). In the present case the contractor, James Miller d/b/a James Miller Logging Contractor (Miller Logging), had no compensation insurance and was apparently insolvent. Under these circumstances, if found to be a statutory employer, the principal, Georgia Pacific, would be extending its solvency to plaintiff’s claim.
Since the intent of Section 1061 was to prevent the evasion of liability by a principal, its provisions come into play only when the principal contracts out work that was part of its regular business. Lewis v. Exxon Corporation, 441 So.2d 192 (La.1983). Although the aim of Section 1061 was to protect an injured worker who otherwise might be without a remedy, much of the jurisprudence evolved from principals who desired this statutory employer status to escape tort liability. The jurisprudence first developed tort immunity for statutory employers. Thibodaux v. Sun Oil Co., 49 So.2d 852 (La.1950). The Legislature codified this jurisprudence in 1976 by including statutory employers in the section provid *57 ing that workers’ compensation was an exclusive remedy. LSA-R.S. 23:1032.
The question of burden of proof reflects this dichotomy. If a principal is seeking a shield against tort liability then claiming to be a statutory employer is an affirmative defense as to which the principal has the burden of proof. If, however, an employee is seeking to recover workers’ compensation benefits he has the burden of showing the requirements of Section 1061 are satisfied. Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), W. Malone and H.A. Johnson, supra, § 126.
The question of whether the work performed by the contractor is part of the principal’s business is one of fact. The facts presented in the present case are analyzed in accordance with the intent and purpose of the statutory employer provisions.
Plaintiff was a 69 year old retiree who unquestionably suffered injuries and substantial medical expenses in a work-related accident. Plaintiff was directly employed as a driver and logrunner by Miller Logging. The trial court found and the. record supports that Miller Logging was cutting timber owned by defendant, Georgia Pacific, on Cat Island near St. Francisville, Louisiana. Miller Logging was exclusively working for Georgia Pacific cutting and hauling pulpwood to its Port Hudson mill. Plaintiff was paid $75 per day regardless of the amount of hours worked and often worked six days per week.
On November 25, 1988 plaintiff was delivering a load of pulpwood from Cat Island to Georgia Pacific’s plant when his truck’s brakes failed as he was negotiating a curve. Plaintiff hit the railing on a bridge causing the truck to overturn and spill its load into the creek below. Plaintiff was seriously injured in the accident.
On November 9, 1989, plaintiff instituted this action for workers’ compensation benefits naming as defendants, Georgia Pacific and Miller Logging. Plaintiff alleged that Miller Logging was his direct employer and Georgia Pacific his statutory employer. However, the trial court found that Miller Logging had not received proper service of process and thus was not properly before the court.
Phil Gordy was called on cross-examination by plaintiff and testified that as Procurement Manager for Georgia Pacific at Port Hudson, he conducted an investigation of the accident. He determined that Miller Logging was cutting and hauling wood for Georgia Pacific. He verified to his satisfaction that there had been an accident involving plaintiff while hauling Georgia Pacific timber to a place designated by that company. Mr. Gordy stated that Georgia Pacific foresters directed Miller and his employees as to which timber to cut and where it would be hauled. While Mr. Gor-dy initially testified that the Cat Island property and timber was owned by Georgia Pacific, he corrected his statements on direct examination and said that the property and timber was actually owned by Rex Timber, Inc., a subsidiary of Georgia Pacific. He also corrected his testimony to state that on the date of the accident, he was employed by Rex Timber and it was this company that had actually contracted with Miller Logging. Mr. Gordy explained that in 1988 all timber lands of Georgia Pacific were under the name Rex Timber and in January 1989 the property went back to Georgia Pacific. He testified that Georgia Pacific paid Miller Logging for all the timber hauled.
James Miller testified that in November 1988 he exclusively cut and hauled wood for Georgia Pacific at Cat Island to its Port Hudson plant. Mr. Miller believed the timber and land belonged to Georgia Pacific. Mr. Miller stated that everything he hauled was at the direction of Georgia Pacific. He testified that Georgia Pacific’s foresters specifically directed the cutting and that he and his crew would work six or seven day weeks according to the needs of Georgia Pacific.
Mr. Miller testified that he was producing wood for Georgia Pacific and that Georgia Pacific directed the cutting and the working times on the basis of their need. He testified that he went to Mississippi after “he quit Georgia Pacific.” He stated *58 that his contract was with Georgia Pacific and Rex Timber and that he furnished a certificate of insurance to both Georgia Pacific and Rex Timber. He specifically testified that both Rex Timber and Georgia Pacific had the same employees and worked out of the same office.
Mr. Miller did not observe plaintiffs accident but found his truck sitting on a bridge with the trailer overturned. While Mr. Miller testified he believed he had workers’ compensation insurance, the record established that such insurance had been can-celled for nonpayment of premiums.
Plaintiff testified that he had worked at Cat Island for approximately two months before he was injured and that all workers were closely supervised by employees of Georgia Pacific. On the date of the accident, he had already hauled one load and received a load slip marked Georgia Pacific. He was hauling his second load when the accident occurred. Initially he experienced difficulty in obtaining medical treatment as he could not verify compensation coverage by either Georgia Pacific or Miller Logging and had been unable to return to any work following the accident.
Georgia Pacific did not file into evidence the contract between Miller Logging and Rex Timber. Its only exhibits were the 1099 tax form from Miller Logging to plaintiff and Miller Logging’s Certificate of Insurance. Except for these two exhibits and its direct examination of Phil Gordy it offered no evidence but chose to rely on the belief that plaintiff failed to carry his burden of proof.
After reviewing the evidence and testimony, the trial court found it was clearly established that plaintiff was the employee of Miller Logging and was injured while performing work within the scope of his employment on Georgia Pacific land. However, the court found that plaintiff did not carry his burden of proof to establish a statutory employer/employee relationship and therefore dismissed plaintiff’s claims against Georgia Pacific. We cannot agree with this conclusion.
In defining a statutory employer, the development of the jurisprudence initially took a liberal or expansive view to allow coverage. Particularly, this expansive view was applied to the timber and mineral extraction industries. Barnes v. Sun Oil Company, 362 So.2d 761 (La.1978). However, in Berry v. Holston Well Service, Inc., supra, the Supreme Court took a more restrictive view. Berry was a tort case in which the principal contractor sought to be a statutory employer and thus limit liability to compensation benefits. In 1989 the Legislature amended Section 1061 to reinstate a more liberal construction of the definition of statutory employer.
A correct analysis of this case must take into account the beneficial intent of the legislation. Justice Lemmon in his concurring opinion in Rowe v. Northwestern National Insurance Company, 471 So.2d 226 (La.1985) stated:
La.R.S. 23:1061 was originally designed solely to prevent an employer from evading his compensation responsibility by interposing an intermediary (typically insolvent and uninsured) to perform part of the work of the employer’s business. In Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950), this court distorted the original intent of the Act by using Section 1061 to grant tort immunity to a principal (an employer who contracted out part of the work of his business to an intermediary). Since the principal had the power to require in the contract that the intermediary furnish compensation insurance, the employer was able under the Thibodaux decision to avoid responsibility either in compensation or in tort. Thus, a principal could bring the employees of the intermediary onto the principal’s premises, no matter how unsafe, with total immunity. See Broussard v. Heebe’s Baker, Inc., 254 So.2d 284 (La.App. 4th Cir.1971) (Judge Lemmon, concurring.)
The Legislature granted tort immunity to the principal for the first time in 1976 by amending La.R.S. 23:1032, the section which originally granted tort immunity to the direct employer. No other state had ever gone so far. 13 W. Malson & H. Johnson, Louisiana Civil Law Treatise *59 —Workers’ Compensation § 128 (2d ed. 1980).
The courts have compounded the unfairness of the situation by interpreting expansively the term “part of his [the principal’s] trade, business or occupation”. Expansive interpretation was justifiable to extend compensation coverage, in view of the beneficial purpose of the Act. But expansive interpretation simply cannot be justified to extend tort immunity, thus encouraging unsafe premises in direct contravention of the public policy of requiring that a worker be furnished a safe place to work. See La.R.S. 23:13. (emphasis added)
In Demery v. Dupree, 511 So.2d 1268 (La.App.2d Cir.1987), writ denied, 514 So.2d 456 (La.1987), this court decided a similar case of an employee of a contractor who was injured while cutting and hauling timber. In Demery, the contractor was working pursuant to an exclusive agreement with a timber broker. This court noted that it was well-settled that a principal engaged in procuring timber products and actually paying for services in their processing, such as the cutting and hauling of the timber, was a statutory employer of the employees of the contractor hired to perform those services. In applying the three level Berry analysis, this court found that the cutting and hauling of timber was not a specialized field of the timber industry. This court then found that a comparison of the timber broker’s and the contractor’s businesses revealed that the cutting and hauling of timber was a part of the broker’s trade. The fact that the work was frequently contracted out, as evidenced by the timber broker’s lack of equipment or employees necessary for the j'ob, did not negate that relationship between the two businesses.
In the present case the sole issue is whether the trial court erred in finding that plaintiff failed to meet his burden of proof that Georgia Pacific was his statutory employer. In brief, Georgia Pacific contends that pursuant to the Berry (tort) analysis, there are four prerequisites to a finding of liability under LSA-R.S. 23:1061. There must be a contract between the principal and contractor; the contract work must have been nonspecialized; the contract work must be sufficiently the same as the principal’s trade, business or occupation to conclude that the principal was involved in the contract field; and, the principal must have, in fact, been engaged in the contract field at the time of the alleged accident.
Georgia Pacific asserts that there was no written instrument between it and Miller Logging. Rather, the contract was between Miller Logging and Rex Timber. While Georgia Pacific concedes that the cutting and hauling of timber is nonspecial-ized, it notes plaintiff produced no evidence relating to the frequency of its use of contractors, its ability to perform the cutting and hauling of timber through its own employees or the practice in the industry. Finally, Georgia Pacific claims plaintiff produced no evidence which would prove that Georgia Pacific was engaged in the trade, business or occupation of cutting and hauling timber at the time of the alleged accident. On this basis, Georgia Pacific argues that plaintiff failed to prove by a preponderance of the evidence the existence of a statutory employee/employer relationship with Georgia Pacific so as to entitle him to workers’ compensation benefits. We disagree.
While Georgia Pacific contends there was no written contract between it and Miller Logging, the evidence shows otherwise. Miller testified that his contract was with Rex Timber and Georgia Pacific. It is noteworthy that despite this testimony Georgia Pacific did not file into evidence the contract in question nor did it present any rebuttal evidence on this issue. The testimony of Mr. Gordy indicated that Rex Timber was merely a division or subsidiary of Georgia Pacific and as such had transferred all of its holdings to Georgia Pacific shortly following the accident. The trial court specifically found that the plaintiff was injured while engaging in the cutting and hauling of timber on Georgia Pacific property. Miller and his employees believed that they were working under a contract with Georgia Pacific and were in fact supervised by Georgia Pacific employees. *60 Miller’s uncontradicted testimony was that Rex Timber and Georgia Pacific shared the same offices and employees. Thus, it appears that there was a sufficient contractual relationship between Georgia Pacific and Miller Logging. This conclusion is further strengthened by the fact that Georgia Pacific alleged it had contracted with Miller Logging in its third party demand.
The next consideration is whether the scope of the contract work was specialized or nonspecialized. As noted above, Georgia Pacific concedes that the work performed by Miller Logging employees was nonspecialized and this court has previously found the cutting and hauling of timber to be nonspecialized work. Demery v. Dupree, supra.
Having found that the contract work was nonspecialized, the inquiry must now shift to whether the contract work can be considered a part of the principal’s trade, business or occupation. The work being performed by Miller Logging at the time of plaintiff’s injury was clearly within the general spectrum of a timber operation and the manufacture of lumber. The growing, selection, cutting, loading and hauling of raw timber is part of Georgia Pacific’s total lumber business. Clearly, the pulpwood plant at Port Hudson required the cutting and hauling of pulpwood timber in order to conduct its normal and routine day to day operation. The fact that the timber was cut and hauled from Georgia Pacific property under the direct supervision of foresters employed by Georgia Pacific further strengthens the conclusion that the entire operation was within the scope of Georgia Pacific’s lumber business. Miller Logging was exclusively cutting Georgia Pacific timber on Georgia Pacific property under the close supervision of Georgia Pacific employees for a Georgia Pacific plant.
The fact that this work may have been frequently contracted out would not negate the relationship between these two businesses. While the record in the instant case contained little evidence of the standard in the timber industry, we do not believe that this factor is controlling under the particular facts of this case. The Supreme Court in Berry indicated that the guidelines set forth by it for comparing the principal’s business with the contract work were not absolute or rigid but rather were to be applied relatively.
The last consideration is whether the principal was engaged in this type of work at the time of the alleged accident. Given the activities of the Georgia Pacific employees in directly supervising this work, it is clear that this standard has been met and Georgia Pacific was engaged in performing cutting and hauling of its timber to its plant. Thus, we conclude that the plaintiff was the statutory employee of Georgia Pacific.
As noted above, the underlying purpose of LSA-R.S. 23:1061 is to prevent principals who employ contractors to perform all or part of their trade, business or occupation from avoiding their workers’ compensation obligations. As Georgia Pacific controlled this project from beginning to end we are satisfied that our conclusion in this case is consistent with this legislative intent. It is also consistent with the intent of Berry, supra, to restrict tort immunity, while allowing § 1061 to operate as it was originally designed.
At the close of plaintiff’s case, Georgia Pacific moved for an involuntary dismissal alleging that plaintiff failed to prove he was a statutory employee of Georgia Pacific. The trial court denied the motion and requested that the attorneys brief only the statutory employer/employee issue. Therefore, the record contains insufficient evidence as to the nature and extent of plaintiff’s disability to allow this court to determine the proper workers’ compensation benefits. Thus, it is necessary to remand this matter to the trial court for the taking of additional evidence in order that the proper amount of workers’ compensation benefits may be calculated.
DECREE
For these reasons the judgment of the trial court in favor of defendant, Georgia Pacific, is REVERSED and this matter is hereby REMANDED to the trial court for further proceedings consistent with the *61 views expressed herein. Costs of this appeal are assessed to defendant.