471 So.2d 226 (1985)
Donald E. ROWE
v.
NORTHWESTERN NATIONAL INSURANCE COMPANY, et al.
No. 85-C-0200.
Supreme Court of Louisiana.
June 28, 1985.
Rehearing Denied September 9, 1985.
*227 Ralph Brewer, Eddie L. Anderson, Baton Rouge, for plaintiff-applicant.
Eugene R. Groves, Harry J. Phillips, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendant-respondent.
BLANCHE, Justice.
This is a suit in tort for injuries sustained by Donald Rowe, an employee of Ace Electric Company (Ace). At the time of the injury, Rowe was reconnecting an electrical wire pursuant to a contract between Cargill, Inc. and Ace. In answer to this suit, defendants filed an exception of no cause of action and a motion for summary judgment alleging that Cargill was the statutory employer of Rowe and that Rowe's exclusive remedy for his injuries was workmen's compensation. The trial court granted defendants' motion for summary judgment but did not rule on the exception of no cause of action. The Court of Appeal affirmed the summary judgment. 461 So.2d 603. We granted writs to consider whether under these facts summary judgment was proper.
Cargill, Inc. is a world wide agricultural company which deals with the merchandising, transportation and sale of agricultural commodities. Rowe's injury occurred at Cargill's bulk liquid import facility in Reserve, Louisiana. The deposition of Mr. Dameron, who is the regional manager for Cargill, states that the Reserve facility is responsible for loading bulk liquids such as molasses, soybean oil, sunflower oil and coconut oil onto ships, railcars and other *228 types of transportation. Six to eight weeks prior to the accident, Cargill scheduled the removal of a Worthington centrifugal pump so that the pump could be cleaned and rebuilt. Mr. Dameron indicated that this was routine maintenance and that it was necessary to schedule the maintenance work in advance because when the pump is not in operation, the liquids that are stored in the various tanks cannot be removed. Likewise, if there was any delay in the repairs, Mr. Dameron stated it cost Cargill approximately $500 per hour to delay a vessel.
Under the Cargill safety procedures, the electric power is disconnected prior to removing the pump. It was Rowe who performed this initial disconnection. The Cargill employees then removed the pump and made the necessary repairs. Likewise, it was Cargill employees who reinstalled the pump when the repairs were completed. After the pump was reinstalled, Rowe made the necessary electrical connections to the motor. When the pump was tested and began to turn, a coupling was thrown from the shaft which struck Rowe in the leg.
The Cargill bulk liquid facility employs approximately 25 people. None of these people are employed as electricians because there is not enough electrical work to justify a full time electrician. Therefore, it is routine policy to employ outside electrical contractors for electrical work at the facility. Cargill also has a grain export facility in Reserve, Louisiana, which is located on the same tract of land as the bulk liquid facility. However, these are entirely separate divisions of Cargill, Inc. and have entirely separate management and personnel. Unlike the liquid bulk facility, the grain elevator maintains a staff of electricians who are capable of performing the same work which Cargill contracted with Ace to perform. In the past, the bulk liquid facility has borrowed these electricians to perform work at the bulk liquid facility. However, the borrowed electrician primarily performed minor electrical work and have never performed the type of work which was being performed by Rowe when he was injured. Mr. Dameron stated that it was both time consuming and cost inefficient to borrow the electricians from the grain elevator and for these reasons, the electrical work at the bulk liquid facility was contracted to Ace.
In order for Cargill, the principal, to be the statutory employer of Rowe under La.R.S. 23:1032, Cargill must show that the work performed by Rowe was a part of Cargill's "trade, business, or occupation" and that Cargill was engaged in that trade, business or occupation at the time of the injury. Lewis v. Exxon Corporation, 441 So.2d 192 (La. 1983) on rehearing; Barnes v. Sun Oil Co., 362 So.2d 761 (La.1978). Likewise, the determination of whether a principal is a statutory employer is a factual question and must be determined on a case by case basis. Lewis v. Exxon Corporation, supra. Generally, in order to be within a principal's trade, business or occupation, it must be routine or customary. Lewis v. Exxon Corporation, supra; Benson v. Seagraves, 436 So.2d 525 (La.1983). If the work being performed by the contractor's employee is customarily performed by employees of the principal, it is part of the principal's trade, business or occupation. Benson v. Seagraves, supra. General maintenance and repair work, which by their nature allow the smooth and continued operations of the principal, are part of the trade, business or occupation of the principal. Lewis v. Exxon Corporation, supra; Barnes v. Sun Oil Co., supra; 1C A. Larson, the Law of Workmen's Compensation, § 51.23 (1982). The scope of the statutory "work" also is important. The specific task to which an individual employee is put should not be determinative of his coverage under the act. Instead, the entire scope of the work contract must be considered. Lewis v. Exxon Corporation, supra; Malone, Principals Liability for Workmen's Compensation to Employees of Contractors, 10 La.L.Rev. 25 (1949).
The Court of Appeal found that employees of the bulk liquid facility borrowed *229 electricians from the grain elevator facility and that these electricians were capable of performing the work at which Rowe was injured. Likewise, they found that on a nationwide basis, this type of work is done by Cargill employees. While these facts may be relevant, we feel that the close proximity of Cargill, Inc. electricians is not essential to determining whether Cargill is the statutory employer of Rowe.
The bulk liquid facility is in the business of loading bulk liquids onto various types of transportation. The work which was being performed on the pump was customarily done by Cargill employees. While it is undoubtedly true that Cargill has shown that the routine maintenance of the pump is part of its trade, business or occupation, this fact alone is not determinative of its status as a statutory employer. Cargill must also show that the disconnection and reconnection of the electricity, which allowed maintenance on the pump to be performed, was also customarily performed by Cargill employees. Benson v. Seagraves, supra; Lewis v. Exxon, supra. However, the testimony of Mr. Dameron clearly shows that employees of the bulk liquid did not customarily perform electrical work and that it was the custom of the facility to contract out this type of work to those who were properly equipped to deal with high voltage electrical wires. Therefore, the reconnection of electricity to the pump by plaintiff was not part of the trade, business or occupation of Cargill. Since plaintiff was not engaged in the trade, business, or occupation of Cargill at the time of the injury, Cargill is not the statutory employer of plaintiff. We therefore conclude that the granting of defendant's motion for summary judgment was improper.

DECREE
The judgment of the district court and the Court of Appeal granting defendant's motion for summary judgment is reversed and set aside and the case is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
DENNIS, J., concurs.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
This case represents a reexamination of the expansive trend taken by the courts in recent years in the so-called statutory employer cases.
La.R.S. 23:1061 was originally designed solely to prevent an employer from evading his compensation responsibility by interposing an intermediary (typically insolvent and uninsured) to perform part of the work of the employer's business. In Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950), this court distorted the original intent of the Act by using Section 1061 to grant tort immunity to a principal (an employer who contracted out part of the work of his business to an intermediary). Since the principal had the power to require in the contract that the intermediary furnish compensation insurance, the employer was able under the Thibodeaux decision to avoid responsibility either in compensation or in tort. Thus, a principal could bring the employees of the intermediary onto the principal's premises, no matter how unsafe, with total immunity. See Broussard v. Heebe's Bakery, Inc., 254 So.2d 284 (La. App. 4th Cir.1971) (Judge Lemmon, concurring).
The Legislature granted tort immunity to the principal for the first time in 1976 by amending La.R.S. 23:1032, the section which originally granted tort immunity to the direct employer. No other state had ever gone so far. 13 W. Malson & H. Johnson, Louisiana Civil Law Treatise Workers' Compensation § 128 (2d ed. 1980).
The courts have compounded the unfairness of the situation by interpreting expansively the term "part of his [the principal's] trade, business or occupation". Expansive interpretation was justifiable to extend compensation coverage, in view of the beneficial purpose of the Act. But expansive interpretation simply cannot be justified to *230 extend tort immunity, thus encouraging unsafe premises in direct contravention of the public policy of requiring that a worker be furnished a safe place to work. See La. R.S. 23:13.
In the present case, the principal routinely contracted out all electrical work, and other employers in the same business generally did such work through outside contractors rather than through their own employees.[1] Since these circumstances indicate that the principal did not contract with an intermediary in order to evade compensation liability, the purpose of the rule was not violated, and Section 1061 is not applicable. Section 1032, which has the same language used in Section 1061, is also inapplicable. I therefore concur in reversing the summary judgment.
NOTES
[1] The principal focus should be on the work covered by the principal's contract and not solely upon the particular task that the contractor's employee is doing at the time of the injury.