IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 91-3787

———————————

EDMUND COLLINS HARRIS, Jr.,
Plaintiff-Appellant,

HIGHLANDS UNDERWRITERS INSURANCE COMPANY,
Intervenor-Appellant,

VERSUS

MURPHY OIL, U.S.A., Inc.,
Defendant-Appellee.

———————————

Appeals from the United States District Court
for the Eastern District of Louisiana

———————————

(December 29, 1992)

Before SMITH and EMILIO M. GARZA, Circuit Judges, and RAINEY,[1]
District Judge.

JOHN D. RAINEY, District Judge:

Edmond Collins Harris, Jr. ("Harris") appeals an adverse summary judgment in his personal injury action against Murphy Oil, U.S.A., Inc. ("Murphy"). Finding no error, we affirm.

I

In March of 1990, Murphy contracted with VIP International Inc. ("VIP") to provide crews and equipment for a "turnaround." A "turnaround" is the scheduled maintenance and refurbishing of the

———————————

[1]District Judge of the Southern District of Texas, sitting by designation.

operating units within a refinery. The turnaround involves vacuuming catalyst out of a reactor, screening the catalyst, and then reinstalling it. In 1990, VIP performed this procedure on abouve five catalyst reactors at Murphy's Meraux, Louisiana, Refinery. VIP also conducted this same turnaround of the catalyst reactors for Murphy in 1985.

The turnaround maintenance, though predictable, occurs only every three to five years and is required for the on-going operation of the refinery. It is undisputed that Murphy's refinery would not function in an economical and profitable fashion without periodic refurbishment, and in fact, without the refurbishment, would eventually completely cease to function.

The 1990 refurbishment was of monumental scale. The Meraux Refinery generally operated with a staff of approximately 280 personnel. Yet, on May 15, 1990, the day of Harris' injury, between 400 and 600 individuals were working at the refinery. Murphy hired VIP to refurbish its operating units, including the Platformer Unit, because Murphy had neither the equipment nor enough trained staff for this type of work. Murphy did, however, provide supervisory personnel to monitor VIP's employees.

On May 15, 1990, Harris slipped and fell in an accumulation of sludge on the pavement at the refinery while reloading catalyst into the Platformer Reactor Unit. At the time of Harris' injury, Murphy employees were directly involved, along with VIP employees, in the catalyst reloading operation.

Harris filed suit in Louisiana state court, and Murphy timely removed the suit to federal district court. Murphy then moved for

summary judgment against Harris, arguing that it enjoyed statutory employer status toward Harris and was thus immune from tort liability.

The district court agreed, finding that Harris was engaged in work that was a part of Murphy's trade, business or occupation at the time of the accident. Accordingly, the district court granted Murphy's motion for summary judgment.

## II

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing the summary judgment, we apply the same standard as the district court. *See Waltman v. Int'l Co.,* 875 F.2d 468, 474 (5th Cir. 1989) (citation omitted); *Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 548-49 (5th Cir. 1989) (citations omitted).

The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). To that end, we must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986) (citation omitted). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)

3

(citation omitted).

Under the Louisiana Worker's Compensation Act, an employee's exclusive remedy for injury is worker's compensation benefits; an employee may not sue his employer or any "principal" in tort. La. Rev. Stat. section 23:1032 (West 1985). Louisiana's worker's compensation law makes certain principal contractors potentially liable for compensation claims from employees of their independent contractors or subcontractors. Employers' do, however, enjoy traditional tort immunity for work-related injuries that occur to their employees.

The La. Rev. Stat. Ann. section 23:1061(A) (West 1985 & Supp. 1992) states when the principal contracts with another to perform work for him that is a part of "his trade, business, or occupation," a principal is liable to any employee for any compensation, pursuant to the Worker's Compensation Law, for which the principal would have been liable if the employee had been immediately employed by him. This provision provides employers with tort immunity for the work-related injuries suffered by the employees of the employer's contractors and subcontractors.

Prior to January 1, 1990, Louisiana used the three part test outlined in _Berry v. Holston Well Service, Inc._, 488 So. 2d 934 (La. 1986), to determine whether a principal was a statutory employer. The Berry decision marked the Louisiana Supreme Court's abandonment of the "integral relation" test established in _Thibodaux v. Sun Oil_, 218 La. 453, 49 So. 2d 852, 854 (1950).

In 1989, however, the Louisiana legislature amended section

4

23:1061(A), adding the following sentence:

> The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.

The 1989 amendment legislatively revised the Berry test and effectively directed the courts back to the previously discarded "integral relation" test found in *Thibodaux.* *See Saavedra v. Murphy Oil, U.S.A., Inc.,* 930 F.2d 1108 n.2 (5th Cir. 1991); *Savant v. James River Paper Co., Inc.,* 780 F.Supp. 393, 397 (M.D. La. 1992); *Brock v. Chevron Chem. Co.*, 750 F.Supp. 779,. 781 (E.D. La. 1990), vacated on other grounds, 946 F.2d 1544 (5th Cir. 1991); *Sawyer v. Texaco Ref. & Mktg., Inc.,* No. 89-2734, 1991 WL 28986 (E.D.La. Feb. 25, 1991). Consequently, the Legislature broadened the reach of the statutory employment language and dramatically curtailed the right of a subcontrator's employee to sue a principal in tort for a work-related injury.

The amendment became effective January 1, 1990. Because the accident in this case occurred on or about May 15, 1990, the amendment applies in defining Harris' legal relationship to Murphy. Accordingly, this Court will consider only whether the injured party's work, i.e.'s Harris' work, was an integral, related part of Murphy's "trade, business, or occupation" in determining whether Murphy has statutory employer status.

At the time of his injury, Harris was performing turnaround maintenance work on a Platformer Unit at the Murphy refinery. The

5

record shows that regular turnaround maintenance of the Platformer Unit was part of Murphy's trade, business or occupation as an oil refinery and was integral to the continued efficient functioning of the operating units. Without it, the unit would cease to function.

Although all inferences are resolved in Harris' favor on summary judgment, the record, taken as a whole, does not reveal a genuine dispute over the material fact that Harris' turnaround work was part of Murphy's trade, business or occupation. Consequently, the district court correctly granted summary judgment in Murphy's favor.

III.

Accordingly, we AFFIRM.