Mark THOMPSON, Plaintiff–Appellant, Cross–Appellee,

v.

GEORGIA PACIFIC CORPORATION, Defendant–Appellee, Cross–Appellant.

No. 92–3716.

United States Court of Appeals, Fifth Circuit.

June 11, 1993.

Brian D. Calvit, Baton Rouge, LA, for plaintiff-appellant.

Vance A. Gibbs, Linda G. Rodrigue, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for defendant-appellee.

Before JOHNSON, JOLLY, and JONES, Circuit Judges.

PER CURIAM:

Mark Thompson was injured in a slip and fall on a flight of stairs at one of Georgia Pacific's paper mills. At the time of the accident, Thompson was working for Scaffolding of Great Britain, Inc. (SGB), an independent contractor hired by Georgia Pacific to erect scaffolding in connection with repair of a recovery boiler during a mill "turn-around."[1] Thompson's fall was caused by the accumulation of a slick, oily residue known as "black liquor" on the stairs.[2] Subsequently, Thompson brought suit against Georgia Pacific, alleging that the presence of the black liquor on the stairs was an unreasonably dangerous condition. The district court eventually granted summary judgment in favor of Georgia Pacific. Both Thompson and Georgia Pacific now appeal from the judgment of the district court.

## I. Facts and Procedural History

SGB had been hired to construct a large scaffold (approximately 180 feet tall) inside a recovery boiler at the Georgia Pacific paper mill in Port Hudson, Louisiana. The scaffold was intended to allow Georgia Pacific workers to inspect and repair rubber tubing at all levels of this multi-story boiler. This type of inspection and repair was an annual part of the maintenance of the mill. However, the scaffolding was also intended for use in the replacement of the boiler's super heater, which is not a part of annual routine maintenance.

At the time of the injury, Thompson was using a stairway inside the building to look for scaffolding materials that had been placed on other floors. In a deposition, Thompson stated that he noticed that the stairs were covered in "black liquor" and that he was trying to be careful while using them. In spite of his efforts, Thompson slipped while descending the stairs and severely injured his knee.

Subsequently, Thompson brought this action against Georgia Pacific under theories of strict liability and negligence. Georgia Pacific filed a motion for summary judgment arguing (1) that under Louisiana Worker's compensation law Georgia Pacific was Thompson's statutory employer and thus immune from tort liability; (2) that Georgia Pacific was not strictly liable for Thompson's injuries; and (3) that Georgia Pacific owed no duty to Thompson under the facts of this case. The district court rejected Georgia Pacific's argument that it was Thompson's statutory employer, but nonetheless granted summary judgment on Thompson's strict liability[3] and negligence claims. Thompson now appeals the district court's holding that Georgia Pacific owed him no duty because the danger was open and obvious. Georgia Pacific appeals from the district court's denial of summary judgment on its statutory employer argument. Because this Court concludes that under Louisiana law Georgia Pacific was Thompson's statutory employer and that summary judgment should have been granted on this issue, we do not reach the issues raised by Thompson.

## II. Discussion

Of course, the standard of review for the grant of summary judgment under Rule 56 is de novo. FDIC v. Ernst & Young, 967 F.2d 166, 169 (5th Cir.1992). Summary judgment is only appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). If this Court determines that the district court erred in its stated reason for granting summary judgment, the

---

1. "Turnaround" is a term used to refer to scheduled maintenance and refurbishing of a manufacturing plant.

2. This residue is a common by-product of the paper manufacturing process.

3. Thompson does not appeal the district court's judgment on his strict liability claims.

judgment of the district court can nonetheless be affirmed provided other adequate grounds for granting summary judgment appear. *Chevron U.S.A., Inc. v. Archer,* 987 F.2d 1138, 1146 (5th Cir.1993).

■ In its motion for summary judgment, Georgia Pacific argued that it was immune from tort liability under Louisiana worker's compensation law because of its status as Thompson's statutory employer. Under Louisiana law, when a principal engages a contractor to perform work that is part of the principal's trade, business, or occupation, the principal is liable for any worker's compensation benefits that must be paid to an employee of the contractor injured in the execution of the work. *See* LA.REV.STAT. § 23:1061(A). In such instances, the principal—commonly referred to as the statutory employer—is immune from any tort liability to the injured employee.

The district court refused to grant Georgia Pacific's motion on this ground, holding instead that the facts surrounding this determination were in dispute and, thus, summary judgment on this basis was inappropriate. Georgia Pacific now argues that this was error. Based on a series of Fifth Circuit cases decided after the district court judgment—*Becker v. Chevron Chemical Co.,* 983 F.2d 44 (5th Cir.1993); *Salsbury v. Hood Indus., Inc.,* 982 F.2d 912 (5th Cir.1993); and *Harris v. Murphy Oil, U.S.A., Inc.,* 980 F.2d 991 (5th Cir.1992)—this Court must agree with Georgia Pacific.

■ Under the applicable statute, the key to statutory employer status is the determination of whether the work performed is a part of the principal's "trade, occupation, or business." In an attempt to set out an appropriate standard for this determination, the Louisiana Supreme Court originally applied the "integral relation" test set forth in *Thibodaux v. Sun Oil Co.,* 49 So.2d 852, 854 (1950). Under that test, the principal was considered a statutory employer if the contractor was engaged in work that was an integral part of the trade, business, or occupation of the principal. In 1986, dissatisfied with the inconsistent results and the expansion of tort immunity produced by the integral relation test, the Louisiana Supreme Court developed a new, more restrictive test. *See Berry v. Holston Well Serv., Inc.,* 488 So.2d 934 (La.1986).[4] In 1989, however, the Louisiana Legislature amended section 23:1061 to overrule *Berry.*[5] This Court has held that the amendment marked a return to the liberal application of the integral relation test. *Salsbury,* 982 F.2d at 916.

Thompson argues that the 1989 amendment to section 23:1061 did not render the *Berry* factors irrelevant; rather, the amendment made it clear that these factors should be viewed as a whole with the presence or absence of no one factor being dispositive. Unfortunately for Thompson, however, that argument was recently squarely rejected by this Court. In *Salsbury,* 982 F.2d at 916, this Court held that the *Berry* factors cannot be used at all—either by themselves or in

---

**4.** In *Berry,* the Louisiana Supreme Court rejected the integral relation test and applied a more restrictive, three-level analysis:

(1) Is the contract work specialized? Specialized work is, as a matter of law, not a part of the principal's trade, business, or occupation, and the principal is not the statutory employer of the specialized contractor's employees.

(2) Where the contract work is non-specialized, the court must compare the contract work with the principal's trade, business, or occupation. At this second step, the court should make the following inquiries:

(i) Is the contract work routine and customary? That is, is it regular and predictable?

(ii) Does the principal have the equipment and personnel capable of performing the work?

(iii) What is the practice in the industry? Do industry participants normally contract

out this type of work or do they have their own employees perform the work?

(3) Was the principal engaged in the work at the time of the alleged accident?

*Salsbury,* 982 F.2d at 914. To be classified as a statutory employer, a principal had to satisfy all three of these so-called *Berry* factors. *Id.*

**5.** Section 23:1061 was amended by adding the following sentence:

The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.

combination with other factors. The only appropriate test is the integral relation test.

■ Any attempt by Thompson to argue that the integral relation test is not satisfied here is foreclosed by another recent Fifth Circuit case. In *Harris v. Murphy Oil, U.S.A., Inc.,* 980 F.2d 991 (5th Cir.1992), this Court held that an oil refinery operator was the statutory employer of an employee of a subcontractor hired to perform maintenance during a plant turnaround. The *Harris* Court noted that this type of maintenance was integral to the continued functioning of the refinery. "Without it, the unit would cease to function." *Id.* at 993. Accordingly, the maintenance was held to be a part of the refinery operator's trade, business, or occupation.

*Harris* is directly on point. In the instant case, as in *Harris,* the subcontractor was hired to assist with a plant turnaround. Also, in both cases the plaintiff's injuries were caused by a slip and fall in an accumulation of sludge. It is undisputed that the recovery boiler was essential to the operation of the paper mill. This particular boiler handled 60% of the mill production load, and without it the mill could only run at 40% capacity. Also, it is undisputed that the maintenance and refurbishing involved in the "turnaround" at the paper mill was required for continued safe operation of the boiler. Deposition testimony indicated that without the inspection and repair of the rubber tubing in the boiler some of the tubes could have burst, causing a major boiler explosion. Under the reasoning adopted in *Harris,* it seems clear that Thompson's work was a part of the "trade, business, or occupation" of Georgia Pacific's paper mill.

The only possible way to distinguish *Harris* from the instant case is that Thompson was not actually performing maintenance work. Instead, he was building the scaffold that would allow Georgia Pacific employees to perform the maintenance. Thompson argues that Georgia Pacific's business was to run the mill, while Thompson's business was to construct the scaffolding. But this argument has also been recently rejected by this Court. In *Becker v. Chevron Chemical Co.,* 983 F.2d 44 (5th Cir.1993), the issue was whether a chemical company was the statutory employer of an independent contractor's employee hired to replace overhead walkways used to access chemical storage tanks. The plaintiff in *Becker* argued that construction of these walkways was not a part of the business of the chemical company. This Court disagreed.

> The overhead walkways were used daily to access hatches located above the storage tanks. Chevron employees needed access to such hatches so that they could sample and test the chemical product stored in the tanks.... We believe that such "work" was an integral part of Chevron's business. The fact that this work might be considered extraordinary construction work, as asserted by Becker, is irrelevant under the amended version of 23:1061.

*Id.* at 46.

The combination of *Harris* and *Becker* is fatal to Thompson's claim. Thompson was injured while constructing scaffolding inside a recovery boiler at Georgia Pacific's paper mill. The scaffold was needed so that Georgia Pacific employees could replace the boiler's super heater and inspect and repair the boiler's rubber tubing. Under Louisiana law, Georgia Pacific was therefore the statutory employer of Thompson. Georgia Pacific was entitled to summary judgment for this reason alone.

### III. Conclusion

The district court did not err in granting summary judgment in favor of Georgia Pacific. Under Louisiana law, Georgia Pacific was Thompson's statutory employer and was therefore immune from this negligence action. Although the district court granted summary judgment on other grounds not considered in this opinion, the judgment of the district court in favor of Georgia Pacific must be AFFIRMED.