626 So.2d 792 (1993)
Dennis W. MOORE, et al., Plaintiffs-Appellants,
v.
CRYSTAL OIL COMPANY, et al., Defendants-Appellees.
No. 25008-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1993.
Rehearing Denied November 24, 1993.
*793 James E. Franklin, Jr., Shreveport, for plaintiffs-appellants.
Davenport, Files & Kelly by Ramsey L. Ogg, Monroe, for intervenor-appellant.
Lunn, Irion, Johnson, Salley & Carlisle by Ronald E. Raney, Shreveport, for defendants-appellees.
Before LINDSAY, VICTORY and BROWN, JJ.
LINDSAY, Judge.
In this tort action arising from a work-related injury, the plaintiffs appealed from a summary judgment granted in favor of the defendants sustaining the statutory employer defense. For the reasons assigned below, we affirm the judgment of the trial court.

FACTS
Crystal Oil Company was engaged in the business of producing oil and gas. It did not employ welders and contracted out its welding work. Custom Tank and Welding, Inc., contracted with Crystal Oil to perform welding in connection with the installation of a new compressor at Crystal Oil's Shongaloo Field, located in Webster Parish. The purpose of this compressor was to receive natural gas from five separate wells located a few miles away via pipeline. The compressor would then boost or increase the pressure from the receiving point forward toward the sales point, where Crystal Oil's pipeline connected to that of its customer, Associated Natural Gas, Inc.
On March 15, 1990, the day of the accident, Custom Tank sent the plaintiff, Dennis W. Moore, to the Shongaloo Field with the equipment necessary to perform the welding required by Crystal Oil. At the time of the accident, Moore was welding some steel legs onto a rack that was to be used to hold a 55-gallon drum. This barrel-type apparatus *794 was to be attached directly to the compressor for the purpose of providing gravity-fed lubrication. Without such lubrication, the drive unit of the compressor would fail and become inoperable. While Moore was performing this operation, Crystal Oil employees were installing valves onto the primary gas line. For testing purposes, the gas line to which the new compressor was to be attached was pressurized. Exactly what happened next is unclear; however, Moore's petition alleged that earlier that day Crystal Oil's construction foreman, Wayne Modisette, ran over the line with a backhoe. Although its cause is disputed, the valve on the line ruptured, emitting gas distillate and vapor into the atmosphere. Moore was welding 50 to 75 feet from the ruptured valve. When the gas vapor reached Moore, an explosion occurred, and Moore was severely burned.
Moore and his wife, Kathy, individually and on behalf of their minor children, Cody and Taylor, filed suit against Crystal Oil and several others. Highlands Insurance Company intervened to recover workers' compensation benefits paid and still owing to Moore on behalf of Custom Tank.
Three of the defendants, Crystal Oil, its insurer, Assicurazioni Generali S.P.A., and its foreman, Wayne Modisette, filed a motion for summary judgment asserting that Crystal Oil, as the statutory employer of Moore, was immune from tort liability and that the two-contract theory applied to bar plaintiffs' claims. The trial court granted defendants' motion for summary judgment, finding Moore to be the statutory employee of Crystal Oil and thus precluded from recovering in tort from Crystal Oil. The trial court specifically declined to rule on the two-contract theory defense.

SUMMARY JUDGMENT
The function and objective of a summary judgment is to avoid the delay and expense of trial on the merits and enable the court to expedite the disposition of the case when there exists no genuine issues of material fact. Central Bank v. Simmons, 595 So.2d 363 (La.App. 2d Cir.1992). However, summary judgment is not to be used as a substitute for a full trial of controverted factual questions which are material to a decision in the case. Reese v. Tayco Food Store, Inc., 602 So.2d 260 (La.App. 2d Cir.1992).
Appellate courts should review the granting of a summary judgment de novo under the same criteria governing the trial court's consideration of whether a summary judgment is appropriate. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Young v. Shelter Insurance Company, 604 So.2d 199 (La.App. 2d Cir.1992), writ denied, 607 So.2d 559 (La.1992); Nolan v. S & W Steel Fabricators, Inc., 600 So.2d 929 (La. App. 2d Cir.1992).
The burden of proof in a motion for summary judgment is on the mover to establish that there are no genuine issues of material fact. This burden is a great one as it is only when reasonable minds must concur that summary judgment is warranted. Any doubts should be resolved in favor of a trial on the merits. Nolan, 600 So.2d at 931. Because the mover has the burden of establishing the lack of material factual issues, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Reese, 602 So.2d at 263.
This case does not present a factual dispute; rather, the parties are disputing the legal conclusion to be drawn from the undisputed facts. The primary legal issue in this case is the effect of Acts 1989, No. 454, amending LSA-R.S. 23:1061, on the existence of a statutory employer/employee relationship and its application to the case sub judice.

STATUTORY EMPLOYER DOCTRINE
LSA-R.S. 23:1061 states when a principal contracts with another to perform work for him that is part of the principal's trade, business or occupation, the principal is liable to pay workers' compensation benefits to any *795 injured employee of the contractor. In such instances, the principal is commonly referred to as the "statutory employer." In exchange for the responsibility placed on statutory employers, this provision provides employers with tort immunity for the work-related injuries suffered by the employees of the employer's contractors and sub-contractors. LSA-R.S. 23:1032. Thus, the linchpin in a finding of statutory employment and tort immunity in favor of the principal is a determination that the contract work is considered a part of the principal's trade, business or occupation.
For many years, the standard for determining whether the contract work was part of the principal's trade, business or occupation was the "integral relation" test established in Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950). According to this test, a statutory employer relationship exists when the contract work is an integral part of the trade, business, or occupation of the principal.
However, in 1986, the Louisiana Supreme Court abandoned the "integral relation" test in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). In its place, the court adopted a more restrictive three-tier analysis for determining whether a subcontractor's employee who was injured while performing work that is considered part of the principal's trade, business or occupation may sue the principal in tort.[1]
For several years courts used the three-level analysis outlined in Berry, supra, to determine if a statutory employment relationship existed. However, in 1989, the Louisiana Legislature amended LSA-R.S. 23:1061 by adding the following sentence:
The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
Acts 1989, No. 454, § 3.
This amendment tracks the language in Berry and rejects the criteria set forth therein. No reported Louisiana state court decision has directly addressed the effect of this amendment on the Berry analysis. However, in addressing the retroactivity of the 1989 amendment, several Louisiana appellate courts have suggested in dicta that it reinstated the "integral relation" test, Carter v. Chevron Chemical Company, 593 So.2d 942, 945-46 (La.App. 4th Cir.1992), writ denied, 596 So.2d 211 (La.1992), and that Berry has been legislatively overruled, returning the courts to a more liberal standard of tort immunity. See Frith v. American Motorists Insurance Company, 613 So.2d 249, 251 (La. App. 1st Cir.1992), writ denied, 617 So.2d 932 (La.1993); Hutchins v. Hill Petroleum Company, 609 So.2d 312, 315 (La.App. 3rd Cir. 1992); Young v. Lyons Petroleum, Inc., 598 So.2d 702, 706 (La.App. 3d Cir.1992), writs denied, 605 So.2d 1149, 1150 (La.1992); Berry v. Brown & Root, Inc., 595 So.2d 767, 769 (La.App. 4th Cir.1992). See also St. Paul *796 Fire & Marine Insurance Company v. Smith, 609 So.2d 809, 821 (La.1992), wherein the Supreme Court made a reference in dicta to "the amendment overruling Berry."
Federal courts deciding Louisiana cases have also held that the amendment broadened the reach of the statutory employment language contained in LSA-R.S. 23:1061 by rejecting the Berry test and returned the law to the "integral relation" test. See Thompson v. Georgia Pacific Corporation, 993 F.2d 1166 (5th Cir.1993); Becker v. Chevron Chemical Company, 983 F.2d 44 (5th Cir. 1993); Harris v. Murphy Oil, U.S.A., Inc., 980 F.2d 991 (5th Cir.1992).
In Salsbury v. Hood Industries, Inc., 982 F.2d 912, 915 (5th Cir.1993), the Fifth Circuit stated:
The amendment [to LSA-R.S. 23:1061] tracks the language in the first two levels of the Berry analysis and specifically rejects each of the factors listed in those two levels. The amendment, however, does not specifically track and reject the third level, which inquires whether the principal was actually engaged in the contract work at the time of the contract employee's injury. We nevertheless believe that the amendment implicitly repudiates this third level by stating that a principal can be considered a statutory employer "regardless of whether the principal has the equipment or manpower capable of performing the work." [Footnote omitted.] Therefore, the amendment repudiates all three parts of the Berry analysis. [Emphasis theirs.]
In the present case, the appellants contend that if the legislature intended to overrule Berry, supra, its attempt at drafting such a result was poor and ineffective. In particular, they contend that the Berry test is still viable because the legislature did not amend the definition of "principal" contained in LSA-R.S. 23:1032.
However, in presenting such an argument, the appellants ignore the fact that courts have always read LSA-R.S. 23:1032 and 23:1061 together. See Carter, 593 So.2d at 944; Salsbury, 982 F.2d at 915; Becker, 983 F.2d at 46.
We are also unimpressed with the appellants' argument that the factors of Berry are still important even if the Berry case itself was legislatively overruled. The 1989 amendment clearly rejected those factors. In Salsbury, 982 F.2d at 916, the Fifth Circuit stated:
The 1989 amendment provides that the Berry factors (such as specialization) "shall not prevent" a principal from being considered a statutory employer. This means that the factors listed in the amendment cannot be used by themselves or in combination with other factors to defeat employer status.
To summarize, in cases where the injury occurred on or after January 1, 1990, the following factors may no longer operate to preclude a finding of statutory employer status: (1) whether the work is specialized or nonspecialized; (2) whether the work is extraordinary construction or simple maintenance; (3) whether the work is usually done by contract or by the principal's direct employee; (4) whether the work is routine or unpredictable; (5) whether the principal is capable of performing the work; and (6) whether the principal was actually engaged in the contract work at the time of injury.
See also Thompson, 993 F.2d at 1168-1169.
Based on the foregoing, we find that Berry, supra, and the factors enunciated therein are no longer the appropriate test for determining whether a statutory employment relationship exists. The current criteria for making such a determination is the "integral relation" test of Thibodaux v. Sun Oil Company, supra.

APPLICATION OF THE "INTEGRAL RELATION" TEST
As previously stated, under the "integral relation" test, a principal will be deemed a statutory employer if the contract work is an integral part of the trade, business, or occupation of the principal. Thus, we now turn to the issue of whether the compressor's installation and Moore's welding activities in connection therewith are activities that are integral or essential to Crystal Oil's trade, business or occupation.
*797 Crystal Oil is in the business of exploring for, processing, transporting, supplying and delivering oil, gas and other petroleum products. In 1990, it became necessary for Crystal Oil to install a compressor at its Shongaloo Field. Crystal Oil orally contracted with Custom Tank, Moore's employer, to provide welding services in connection with the compressor's installation. The purpose of this compressor was to receive natural gas from nearby wells via pipeline and boost or increase the pressure in the pipeline from the receiving point forward toward the sales point.
Beginning the morning of March 15, 1990, and extending into the afternoon, Wayne Modisette, Crystal Oil construction foreman, assigned various welding duties to Moore. One such assignment was to weld steel legs to a rack which was to be used to hold a 55-gallon drum. Wayne Modisette stated in his affidavit that the work being performed by Moore was a necessary and integral part of Crystal Oil's trade, business or occupation. Specifically, welding legs on the rack that would hold the lubrication barrel was essential and necessary to the installation and operation of the compressor because the compressor was needed to pump the gas into the pipeline.
Given the above facts, we believe that the trial court was correct in finding that Moore's welding activities were an integral part of Crystal Oil's trade, business or occupation. See and compare Allen v. United States Fire Insurance Company, 222 So.2d 887 (La.App. 2d Cir.1969).

TWO-CONTRACT THEORY
Due to its holding on the issue of statutory employment, the trial court did not rule on the two-contract theory asserted by Crystal Oil. Having resolved the matter on other grounds, we likewise find it unnecessary to consider this claim.

CONCLUSION
The summary judgment granted by the trial court is affirmed. Costs are assessed equally between the plaintiffs/appellants and the intervenor/appellant.
AFFIRMED.
BROWN, J., dissents with written reasons.
BROWN, Judge, dissenting.
Under Louisiana workers' compensation law, when a principal contracts with another to perform work that is part of the principal's trade, business or occupation, the principal is liable to pay workers' compensation benefits to any injured employee of that contractor. LSA-R.S. 23:1061. In such instances, the principal is commonly referred to as the statutory employer. Because of the exclusiveness of the compensation remedy, statutory employers are provided with tort immunity for the work-related injuries suffered by the employees of their various contractors even though they never actually pay any compensation benefits. LSA-R.S. 23:1032.
LSA-R.S. 23:1061 was designed to prevent the avoidance of workers' compensation responsibility by a principal who interposes an intermediary (who is typically insolvent or uninsured) to perform work that is part of the principal's trade, business or occupation. However, the courts have demonstrated uneasiness when this provision is asserted by a principal as a defense to a tort claim, particularly when all workers' compensation benefits are paid by the contractor or its insurer. See Lemmons' concurrence, Rowe v. Northwestern National Insurance Company, 471 So.2d 226 (La.1985); Howard v. Georgia Pacific Corp., 583 So.2d 55 (La.App. 2d Cir. 1991). When the status as a statutory employer is asserted as a defense to a tort claim, the defendant has the burden to prove entitlement to immunity. Rowe, supra. The crucial inquiry is whether the work undertaken by the contractor is considered to be part of the principal's trade, business or occupation.
In 1986, the Louisiana Supreme Court attempted to give some organization to the process of determining when tort immunity should be conferred and announced a three-tier analysis in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). To be classified as a statutory employer under the *798 Berry analysis, the principal must clear three hurdles:
(1) Is the contract work specialized? Specialized work is, as a matter of law, not a part of the principal's trade, business or occupation, and the principal is not the statutory employer of the specialized contractor's employees.
(2) Where the contract work is non-specialized, the court must compare the contract work with the principal's trade, business or occupation. At this level the court should make the following inquiries:
(i) Is the contract work routine and customary? Is it regular and predictable?
(ii) Does the principal have the equipment and personnel capable of performing the work?
(iii) What is the practice in the industry? Do industry participants normally contract out this type of work or do they have their own employees perform the work?
(3) Was the principal engaged in the work at the time of the alleged accident?
As stated by Alston Johnson in his analysis of the Berry decision:
The court found the roots of its three-level inquiry in the appellate cases over the years so there is really nothing new in the substance of the test; rather, there is a restatement of existing law. Certainly, the court said that it had been shifting its interpretive analysis regarding the statutory employer defense from one which favored a liberal application of the doctrine [of tort immunity] to one which is more restrictive.
W. Malone & A. Johnson, Workers' Compensation Law and Practice, § 364 at 36, 14 La. Civil Law Treatise (Supp.1993).
For several years courts used the Berry three-level analysis to determine the existence of a statutory employment relationship. Apparently in response to the Berry decision, the Louisiana Legislature amended LSA-R.S. 23:1061 in 1989 by adding the following sentence:
The fact that work is specialized or non-specialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
Although this amendment is found only in section 1061 dealing with compensation benefits and not in section 1032 dealing with tort immunity, it reflects the legislature's intent to overrule the inflexibility of the Berry test. The supreme court in Berry fashioned factors which had been applied by Louisiana courts in a rigid fashion. In overruling the inflexibility of the Berry test for statutory employment, the legislature did not specify that these factors were no longer to be considered. In fact, the statute does not say how the courts are to determine whether contract work is part of the principal's trade, business or occupation. Because the amendment expands an immunity and limits a right to recovery it must be construed narrowly. Thus, I would hold the legislature intended a return to the pre-Berry statutory employment analysis, which involved a "totality of the circumstances" approach to include consideration of the Berry factors. See Malone & Johnson, supra, at 39.
The total circumstances of each particular case should be considered by the court when making a "trade, business or occupation" determination. As stated in pre-Berry decisions, "... [N]o single factor is determinative. Courts must look to the particular facts and circumstances of each individual case in order to determine whether a particular activity falls within the scope of the principal's trade, business or occupation." Rowe v. Northwestern National Insurance Co., 471 So.2d 226 (La.1985); Butler v. Home Insurance Company, 448 So.2d 801 (La.App. 2d Cir.1984), writ denied, 450 So.2d 954 (La. 1984), reversed in part by Berry v. Holston Well Service, Inc., supra at 939 n. 4.
A "totality of the circumstances" approach involves consideration on a case-by-case basis of the various factors discussed by pre-Berry courts. No single factor is determinative; *799 the presence of one factor may compensate for the lack of another.
Among the factors to be considered by the court in making a "trade, business or occupation" determination are:
Was the work specialized or non-specialized?

Teague v. Sawyer Drilling Company, 499 So.2d 127 (La.App. 2d Cir.1986); Chauvin v. Gulf Coast Minerals, Inc., 509 So.2d 622 (La.App. 3d Cir.1987), writ denied, 512 So.2d 1175 (La.1987); Cantrell v. BASF Wyandotte, 506 So.2d 793 (La.App. 1st Cir. 1987), writ denied, 512 So.2d 1178 (La. 1987); Roberts v. Amstar Corporation, 496 So.2d 1146 (La.App. 4th Cir.1986); Palmer v. Loyola University, 496 So.2d 421 (La. App. 4th Cir.1986), writ denied, 501 So.2d 207 (La.1987).
Was the contract work routine, customary, ordinary or usual?

Rowe v. Northwestern National Insurance Co., 471 So.2d 226 (La.1985); Butler v. Home Insurance Co., 448 So.2d 801 (La. App. 2d Cir.1984), writ denied, 450 So.2d 954 (La.1984); Berry v. Brown & Root, Inc., 595 So.2d 767 (La.App. 4th Cir.1992); Poirrier v. Cajun Insulation, Inc., 459 So.2d 737 (La.App. 4th Cir.1984).
Does the defendant customarily have his own employees perform the work?

Lewis v. Exxon Corporation, 441 So.2d 192 (La.1983), on remand, 451 So.2d 24 (La. App. 1st Cir.1984); Teague v. Sawyer Drilling Co., supra.

Does the defendant have the equipment and personnel capable of performing the contract work?

Lewis v. Exxon Corporation, supra; Teague v. Sawyer Drilling Co., supra; Berry v. Brown & Root, Inc., supra; Stine v. Creel, 417 So.2d 1243 (La.App. 1st Cir.1982), writ denied, 422 So.2d 163 (La.1982).
What is the practice in the industry? Do industry participants normally contract out this type of work or do they have their own employees perform the work?

Rowe v. Northwestern National Insurance Co., supra; Barnes v. Sun Oil Company, 362 So.2d 761 (La.1978); Berry v. Brown & Root, Inc., supra; Bonstill v. Goldsberry Operating Co., 478 So.2d 729 (La.App. 3d Cir.1985); Calais v. Exxon Pipeline Co., 430 So.2d 321 (La.App. 3d Cir.1983).
Was the defendant engaged in the contract work at the time of the incident?

Rowe v. Northwestern National Insurance, Co., supra; Lewis v. Exxon Corporation, supra; Roberts v. Amstar Corporation, supra; Palmer v. Loyola University, supra.

An analysis of the trial court's opinion in this case leads to the inescapable conclusion that the trial court applied the wrong standard in granting summary judgment. The trial court only considered whether the compressor being installed was an integral part of the trade, business or occupation of Crystal Oil. Likewise, the circumstances presented do not eliminate all material factual questions. Crystal Oil contracted with Custom Tank for welding services in connection with the installation of its new compressor system at its Shongaloo Field. In his deposition, plaintiff, Dennis Moore, stated that he has a specialized truck with specialized machines for welding and cutting. Pat Eddings, Manager of Security, Safety and Environmental Protection for Crystal Oil, stated that Crystal Oil did not employ welders and that the company contracted out all of its required welding work. John Walsh, Vice President of Crystal Oil, stated that the installation of the compressor station was new construction. Crystal Oil does not and has not in the past employed welders, nor do they own any welding equipment.
Summary judgment is proper only where there are no issues of material fact and the mover is entitled to judgment as a matter of law. At issue in the instant case are several facts that are crucial to a "trade, business or occupation" determination. These disputed issues preclude defendant from being entitled to judgment as a matter of law. See Young v. Lyons Petroleum, Inc., 598 So.2d 702 (La.App. 3d Cir.1992).
Neither the trial court nor the majority of this court ruled on the two-contract theory claim of Crystal Oil. The two-contract theory is taken from LSA-R.S. 23:1061, which *800 provides compensation liability and tort immunity to a principal, as follows:
When any person ... undertakes to execute any work ... which he had contracted to perform, and contracts with any person,... for the execution ... of the whole or part of the work....
Crystal Oil owned over 75% of the mineral interest in the Shongaloo field and cannot be considered as contracting with itself and the minority interest owners, nor does the contract to sell to Associated Natural Gas, Inc., represent a contract to perform work. Thus, under the circumstances presented in this case, I would find that the two-contract theory is not applicable.

APPLICATION FOR REHEARING
Before NORRIS, LINDSAY, VICTORY, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] Under the test established in the Berry case, a principal was required to satisfy all three of the following factors to be classified as a statutory employer:

(1) Is the contract work specialized? Specialized work is, as a matter of law, not a part of the principal's trade, business, or occupation, and the principal is not the statutory employer of the specialized contractor's employees.
(2) Where the contract work is nonspecialized, the court must compare the contract work with the principal's trade, business, or occupation. At this second step, the court should make the following inquiries:
(i) Is the contract work routine and customary? That is, is it regular and predictable?
(ii) Does the principal have the equipment and personnel capable of performing the work?
(iii) What is the practice in the industry? Do industry participants normally contract out this type of work or do they have their own employees perform the work?
(3) Was the principal engaged in the work at the time of the alleged accident? [This third part of the Berry analysis has been interpreted to mean that the principal must itself be engaged in the contract work at the time of the injury. See Mozeke v. International Paper Company, 856 F.2d 722, 727-728 (5th Cir. 1988); Palmer v. Loyola University, 496 So.2d 421, 423 (La.App. 4th Cir.1986), writ denied, 501 So.2d 207 (La.1987)].