**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-3573

JACQUELINE MORGAN, ET AL.,

Plaintiff-Appellant,

VERSUS

GAYLORD CONTAINER CORP., ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

(August 16, 1994)

Before REYNALDO G. GARZA and DeMOSS, Circuit Judges, and PARKER,
District Judge.[1]

DeMOSS, Circuit Judge:

### BACKGROUND

Jacqueline Morgan was an employee of Thomas Industrial
Corporation ("TIC"), a subcontractor on a modification and
expansion project at the Gaylord Container Corporation's ("GCC")
paper mill in Bogalusa, Louisiana.  GCC hired TIC to effect

---

[1]Judge Parker participated by designation in the oral argument
of this case as a United States District Judge for the Eastern
District of Texas.  Since that time he has been appointed as a
Fifth Circuit Judge.

improvements to the duct system of GCC's wastepaper recovery system. At the time of the alleged accident, Morgan was engaged in work undertaken by TIC in its contract with GCC. Specifically, Morgan was operating a high pressure hose and washing out an area of the mill when she allegedly slipped and fell.

Morgan filed suit against GCC and Goulds Pumps, Inc., the manufacturer of pumps which allegedly leaked water on to the flooring surface of the area Morgan was washing out. Morgan alleged that GCC, as premise owner, was responsible in tort for her injuries. She also alleged theories of products liability against Goulds for designing the pump in such a manner as to allow water to leak on to the floor of the mill and for failing to provide an adequate warning concerning the hazards occasioned by the pump's design.

Both defendants moved for summary judgment. GCC asserted that Morgan was its statutory employee under Louisiana's worker's compensation laws and, therefore, that it was immune from tort liability. Goulds claimed, *inter alia*, that as a matter of law, its pumps were not defectively designed and that it had no duty to warn Morgan of a condition which was open and obvious. The district court granted both defendants' motions, and Morgan now appeals.

**DISCUSSION**

1. <u>GCC's Judgment</u>

As pointed out by the district court,"[t]his case does not present a factual dispute; the parties only dispute the legal

2

conclusion [to be] draw[n] from the undisputed facts." The district court concluded that GCC was Morgan's statutory employer. Morgan disputes both this conclusion and the legal analysis employed to reach it. Review of Louisiana's statutory employer doctrine is warranted.

Like other such systems, Louisiana's worker's compensation system immunizes employers from tort liability for injuries their employees suffer for which the employees would be entitled to worker's compensation benefits. LA. REV. STAT. ANN. § 23:1032 (West 1985). Louisiana extends this immunity to persons who contract with others to perform work which is a part of the person's "trade, business, or occupation." Id. In such a circumstance, the person becomes the worker's "principal," or a statutory employer.[2] LA. REV. STAT. ANN. § 23:1061 (West Supp. 1994). Thus, a principal is immunized from tort liability if the contract work being performed was a part of the principal's trade, business, or occupation.

The Louisiana Supreme Court in <u>Berry v. Holston Well Service, Incorporated</u> articulated a detailed, three level analysis for determining whether contract work was part of a principal's trade, business or occupation.[3] <u>See</u> 488 So. 2d 934, 937-38 (La. 1986).

_____

[2]"Principal" is defined as "any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he contracted to perform and contracts with any person for the execution thereof." LA. REV. STAT. ANN. § 23:1032.

[3]<u>Berry</u> states that the first level of analysis focuses on "the scope of the contract work." The "central question" under this level is "whether the work is specialized or non-specialized." If specialized, then the work is not a part of the principal's trade, business, or occupation. If it is non-specialized, the second

3

The <u>Berry</u> test represented a very restrictive application of the statutory employer doctrine and a rejection of the previously employed "integral relation" test. <u>Harris v. Murphy Oil, U.S.A., Inc.</u>, 980 F.2d 991, 993 (5th Cir. 1992).

However, in 1989, the Louisiana Legislature amended the worker's compensation statute.[4] <u>See</u> LA. REV. STAT. ANN. § 23:1061 (West Supp. 1994). The amendment has been interpreted as a repudiation of the <u>Berry</u> test and the factors applied therein. <u>See</u> <u>Salsbury v. Hood Industries, Inc.</u>, 982 F.2d 912 915 (5th Cir. 1993). The amendment also heralded a reinstatement of the previously rejected integral relation test. <u>Id</u>., at 916. Thus, to determine whether a contractor's work is a part of the principal's trade, business, or occupation, we apply the integral relation test and ask whether the contract work being performed is integral or essential to the principal's trade, business, or occupation. <u>Deal v. International Paper Company</u>, 632 So. 2d 870, 871 (La. App. 2d

---

level of analysis is employed to compare the contract work with the principal's trade, business, or occupation. This level involved three independent inquiries: (1) whether the work was routine or customary, (2) whether the principal had the equipment and personnel to perform the work, and (3) what was the practice of the industry. The final level of analysis inquired whether the principal was engaged in the work at the time of the injury. 488 So. 2d at 937-39.

[4]The Legislature added the following language to § 23:1061: The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.

4

Cir. 1994).

Morgan contends that the <u>Berry</u> factors are still relevant for determining whether the integral relation test has been met. She argues that "[t]he factors enumerated in <u>Berry</u> were present at the very birth of the integral relation test[,]" and thus, that any application of the integral relation test necessarily entails consideration of the <u>Berry</u> factors. She suggests that the change occasioned by the amendment to LA. REV. STAT. ANN. § 23:1061 does not preclude consideration of the <u>Berry</u> factors, but that amendment no longer makes the factors determinative.

Morgan's argument has been specifically rejected by both this court and Louisiana intermediate appellate courts. <u>Thompson v. Georgia Pacific Corp.</u>, 993 F.2d 1166, 1168-69 (5th Cir. 1993); <u>Becker v. Chevron Chemical Co.</u>, 983 F.2d 44, 46 (5th Cir. 1993); <u>Salsbury</u>, 982 F.2d at 915-916; <u>Picard v. Zeit Exploration Co.</u>, --- So.2d ---, 1994 WL 86167, *4 (La. App. 1st Cir. Mar. 11, 1994); <u>Moore v. Crystal Oil Company</u>, 626 So. 2d 792, 796 (La. App. 2d Cir. 1993). We decline, therefore, Morgan's invitation to consider or apply any of the <u>Berry</u> factors.

Rejection of Morgan's proposed analysis results in rejection of her proposed conclusion. Her argument against the existence of a statutory employer relationship relies on several, if not all, of the <u>Berry</u> factors. Moreover, her argument that GCC was engaged in extraordinary construction beyond the scope of its trade, business,

5

or occupation is unavailing. <u>Becker</u>, 983 F.2d at 46 ("[t]he fact that this work might be considered extraordinary construction work . . . is irrelevant under the amended version of 23:1061[]"); <u>see also</u> <u>Thompson</u>, 993 F.2d at 1169.

As the undisputed facts reveal, GCC embarked on a project to expand the wastepaper handling capacity of the Bogalusa paper mill. The project was necessary to increase the wastepaper capacity of the paper mill from 100 tons per day to 100,000 tons per day and allowed GCC to increase the overall productivity of the plant. The specific project to which Morgan was assigned was the "Number 8 Paper Machine Project." This project called for the demolition of a smaller paper machine and the installation of a new, larger machine, including a building and all supporting equipment. At the time of the accident, Morgan was preparing a flooring surface for the installation of a concrete base on which a pump was to be installed. The pump and its supporting structures were an integral part of the Number 8 Paper Machine Project. We hold, therefore, that the contract work performed by TIC, and specifically by Morgan, was an integral part of GCC's trade, business, and occupation within the meaning of LA. REV. STAT. ANN. § 23:1032.

We affirm the district court's entry of summary judgment in favor of GCC.

## 2. Goulds's Judgment

As stated above, Morgan sought damages from Goulds under products liability theories of defective design and inadequate warning. For the reasons discussed below, the district court

6

entered judgment for Goulds on both claims and denied Morgan's motion for reconsideration. Finding ourselves in agreement with the court's reasoning and conclusions, we affirm entry of summary judgment for Goulds.

a. Defective Design Claim

In order for Morgan to recover from Goulds on her defective design claim, she would have to prove that

> . . . at the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damages; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

LA. REV. STAT. ANN. § 9:2800.56 (West 1991).

To withstand Goulds's motion for summary judgement, Morgan was required to present evidence sufficient to enable a reasonable trier of fact to conclude that she had established the essential elements of her claim, including that safer alternative designs were in existence at the time the pump left Goulds's control and that the risk avoided by such designs outweighed the burden of adopting the designs. Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 181 & 183 (5th Cir. 1990). The district court held that Morgan's proof failed on both accounts, and we agree.

Morgan tendered the expert opinions of Dr. Samuel J. Brown in support of her claim. Dr. Brown opined concerning the defects associated with the design of Goulds's pump and concerning several

7

allegedly safer design alternatives.  However, as the district court twice made clear to Morgan, wholly absent from Dr. Brown's report is any assertion that the suggested design alternatives were in existence at the time the pump left Goulds's control.  Moreover, Dr. Brown failed to offer any opinion concerning the effect, if any, of his suggested design alternatives on the utility of the pump.  Absent such proof, Morgan's defective design claim did not deserve to go any further. Id. at 183-84.

Apparently acknowledging the failure of proof on these elements, Morgan takes the position that Dr. Brown's design modifications are "obvious[ly]" inexpensive and easily implemented.[5]  She relies on language from the Lavespere decision noting that

> there may be cases in which the judge or the jury, by relying on background knowledge and 'common sense,' can 'fill in the gaps' in the plaintiff's case, estimate the extent of the risk avoided, the costs of implementing the proposed design change, or the adverse effects of the design modification on the utility of the machine.

910 F.2d at 184 (footnote omitted).  While we agree that such cases may arise, we conclude that this is not such a case.

The pumps at issue here are operated by an electric motor.  A shaft runs from the motor to the impeller of the pump.  The impeller is the device which causes the mixture of water and pulp to flow through pipes to various screens and filters.  Where the shaft passes through the pump housing, it is sealed by a "stuffing

---

[5]We note that Morgan does not press this argument in relation to whether any of Dr. Brown's design alternatives were in existence at the time the pump left Goulds's control.

8

box." The shaft inside this stuffing box rotates at high speed and generates heat. As a result, it must be cooled and lubricated. Water is used to cool and lubricate the stuffing box area and to keep grit and debris from the water and pulp mixture from damaging the shaft and seals. The cooling water in the stuffing box is allowed to flow into a steel base below the pump known as a "drip lip style base." The base is drained by a 3/4" opening in its bottom. Morgan alleges that this opening is too small and frequently clogs, thus causing water to overflow the base and on to the floor.

Dr. Brown's proposed modifications to this cooling system leave unanswered questions of engineering and design that are of sufficient complexity to be beyond the expertise of the average judge and juror. We reject, therefore, Morgan's suggestion that common sense makes obvious the relative ease and inexpense of effecting Dr. Brown's modifications.

We affirm the district court's judgment *vis á vis* Morgan's defective design claim.

b.   Failure to Warn Claim

The district court held that Goulds had no duty to provide Morgan adequate warning concerning the pumps based on LA. REV. STAT. ANN. § 9:2800.57(B)(2), which provides:

B.  A manufacturer is not required to provide an adequate warning about his product when:

. . .

(2)  The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and

9

the danger of such characteristic.

The court concluded that GCC was the "user or handler" of the Goulds pump, that GCC was aware of the small drain opening, and that GCC was aware that water flowed on to the floor of the mill. The court concluded, therefore, that Goulds was not required to provide GCC a warning. Since the court had already determined that Morgan was GCC's statutory employee, the court held further that Goulds was not required to warn Morgan. See Davis v. Avondale Indust., Inc., 975 F.2d 169, 173 (5th Cir. 1992) ("the seller is likewise discharged of the duty to warn the employee if the seller has no duty to warn the employer because of the latter's sophistication").

Morgan argues that "Goulds had an affirmative duty to warn GCC of the potential hazards associated with that leakage as well as how that hazard could be avoided."[6] Morgan concedes, however, that "[GCC] knew that the drain holes would clog and that the pumps leaked water." She also acknowledges that "GCC attempted unsuccessfully to keep the water from flowing onto the floor." Her position is that GCC "apparently did not know how to solve this problem[,]" and that Goulds had the duty "to inform [GCC] of the effective means of how to control the leakage of water onto the floor . . . and/or how to minimize the dangerous effects."

It is clear that GCC was fully aware of "the characteristic of

---

[6]We note that Morgan does not challenge the district court's reasoning that Goulds's duty to warn Morgan was contingent upon the existence of a duty to warn GCC. Morgan's sole argument on appeal concerns Goulds's alleged duty to provide GCC with an adequate warning.

the product that [allegedly] cause[d] damage," i.e., the clogging of the drain hole, and of "the danger of such characteristic," i.e., that water would leak on to the floor. See LA. REV. STAT. ANN. § 9:2800.57(B).  Thus, Goulds was not required to provide GCC an adequate warning concerning its pump.[7]

In light of the foregoing, we affirm the district court's entry of summary judgment for Goulds.

AFFIRMED.

---

[7]Our conclusion concerning LA. REV. STAT. ANN. § 9:2800.57(B)(2) makes it unnecessary for us to address Goulds's additional argument concerning § 9:2800.57(B)(1).  We note, however, that the danger allegedly caused by the smallness of the drain opening, i.e., the overflow and accumulation of water on the floor of the paper mill, was, or at least should have been, obvious to Morgan.  We note further that Louisiana law does not require manufacturers to provide warnings of dangers which are obvious to the ordinary user. Beck v. Somerset Technologies, Inc., 882 F.2d 993, 997 (5th Cir. 1989).