Edward Lee SISK and Enola Marie Sisk

v.

SEARS, ROEBUCK & CO. and Emerson Electric Co.

Civil Action No. 95–1255.

United States District Court, E.D. Louisiana.

Oct. 22, 1996.

---

Lawrence Blake Jones, David Christopher Whitmore, Scheuermann & Jones, New Orleans, LA, Robert Clemenz, New Orleans, LA, for plaintiffs.

James H. Brown, Jr., Edward F. Kohnke, IV, Francis Horatio Brown, III, Wayne K. McNeil, Charles William Belsom, Jr., Frilot, Partridge, Kohnke & Clements, LC, New Orleans, LA, for defendants.

## ORDER AND REASONS

BERRIGAN, District Judge.

This matter is before the Court on defendants' motion to exclude evidence of alternative designs and for summary judgment on plaintiffs' design defect claim. For the following reasons, the Court grants defendants' motion for summary judgment and dismisses the motion to exclude evidence as moot.

Plaintiffs Edward Sisk and Enola Sisk have filed suit against defendants Sears, Roebuck and Co. ("Sears") and Emerson Electric Co. ("Emerson") to recover damages arising from an accident Mr. Sisk suffered in 1994 while using a Sears Craftsman 10–inch radial arm saw. The saw at issue was manufactured by Emerson in 1982 and was purchased in a used condition by Mr. Sisk in 1992 or 1993.

On this motion, defendants seek summary judgment on plaintiffs' claim under the Louisiana Products Liability Act ("LPLA"), 9:2800.51, *et seq.*, for a product unreasonably dangerous in design.

Summary judgment is appropriate if the record discloses that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motions and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions of file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue of fact for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Factual questions and inferences are viewed in the light most favorable to the nonmovant. *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

To establish a claim for a product unreasonably dangerous in design under the LPLA, a plaintiff must show two elements:

1) An alternative design for the product existed at the time the product left the manufacturer's control that was capable of preventing the claimant's damage.

2) The alternative design passes the risk utility test. La. R.S. 9:2800.56.

In moving for summary judgment, defendants argue that plaintiffs cannot establish

the first element because none of plaintiffs' proposed design alternatives existed at the time the product left the manufacturer's control in 1982. In their opposition to summary judgment, plaintiffs put forth a single design proposal as satisfying the first element—a blade guard retractable only by operator input.[1] This type of design was developed in 1990 and the design was patented in 1994 as the Metzger guard (the parties also refer to this design as the Emerson guard or the Sears guard). Plaintiffs assert that this proposed alternative design meets the "in existence" requirement because it was "feasible in light of reasonably available technological knowledge in 1982."

■ While Louisiana law previous to the LPLA's enactment allowed design defect claims predicated upon design alternatives that were "theoretically possible" or feasible, plaintiffs under the LPLA must show that the alternative design was "in existence." *Lavespere v. Niagara Machine and Tool Works, Inc.,* 910 F.2d 167, 179–81 (5th Cir. 1990); *see also Morgan v. Gaylord Container Corp.,* 30 F.3d 586, 590 (5th Cir.1994). The plain language of § 2800.56(1) explicitly requires that the alternative design *"existed"* at the time the product left the manufacturer's control. La. R.S. 9:2800.56(1). Furthermore, the Fifth Circuit has highlighted the "in existence" requirement established by the LPLA: "Section 2800.56 effects two changes in the law. First, the new section imposes on the plaintiff the requirement of showing than an alternative design was *in existence* at the time the product left the manufacturer's hands." *Lavespere,* 910 F.2d at 181.

■ Plaintiffs' discussion of technical feasibility is not relevant to their burden under § 2800.56 of showing that their alternative design was in existence. The legislature chose not to mention feasibility when it set out the elements of a design defect claim; however, it was not unfamiliar with the con-

cept—feasibility is addressed later in § 2800.59. Section 2800.59 sets out the affirmative defenses available to a defendant against LPLA design defect claims:

> Notwithstanding R.S. 9:2800.56, a manufacturer of a product shall not be liable for damage proximately caused by a characteristic of the product's design if the manufacturer proves that, at the time the product left his control: . . .
>
> (3) The alternative design identified by the claimant under R.S. 9:2800.56(1) was not feasible, in light of then-existing reasonably available scientific and technological knowledge or then-existing economic practicality.

La. R.S. 9:2800.59 Thus, feasibility is not an issue except as an affirmative defense once the plaintiff has established the elements set out by § 2800.56, including that the alternative design was in existence.

■ Plaintiffs in this case have shown no evidence that their proposed alternative design—a guard that retracted only with operator input—existed in 1982, when Mr. Sisk's saw was produced. Plaintiffs seek to survive summary judgment simply on speculation that a design could have been created in 1982. The testimony plaintiffs produce only establishes that the technology for a saw blade guard and the technology for a linkage system existed separately in 1982. This testimony might be helpful if plaintiffs were seeking to have two discrete existing technologies added onto the saw—such as, adding a guard for the blade and adding a locking device for the saw. However, the design plaintiffs propose is an integrated whole—the development of a guard that can retract upon operator input. Plaintiffs' expert was unaware of anyone having merged the technology of a lower blade guard with an operator trigger mechanism in 1982 "in one design." As defendants acknowledge, no such design had been developed in 1982.[2]

---

1. Plaintiffs do not defend the 1979 Rockwell guard as a separate alternative design, but assert that this design was "merely produced to demonstrate that parts of the technology for the plaintiffs' proposed alternative design existed prior to 1982." Plaintiffs also do not claim in their opposition to summary judgment that the squeeze trigger-type carriage lock proposed by their expert Steven Killingsworth is an appropriate alternative design under the LPLA.

2. Plaintiffs acknowledge, "There is no dispute that the guard now produced by the defendants [i.e., a guard that only retracts upon operator input] was not in existence." Plaintiffs further state, "Perhaps the development of the new

█ Furthermore, plaintiffs fail to counter defendants' evidence that the guard plaintiffs' propose was conceived of in 1990—eight years after Emerson produced Mr. Sisk's saw—and first produced by Emerson in 1992. The operator-input retracting guard was awarded two patents in 1994, and the plaintiffs' expert noted that patents are awarded to unique technological ideas. Plaintiffs correctly state that federal patent law is not dispositive regarding whether a design "existed" under the LPLA. Nonetheless, the Court considers the award of patents to the operator-input retracting guard persuasive when considered with the other evidence—particularly in the absence of any evidence that plaintiffs' proposed alternative design existed previous to 1990.

Plaintiffs have proposed no alternative design in existence when Mr. Sisk's saw was produced in 1982 and thus summary judgment is appropriate on their design defect claim under the LPLA.

Accordingly,

IT IS ORDERED that defendants' motion to exclude evidence of alternative designs and for summary judgment on plaintiffs' design defect claim is GRANTED in part in regards to summary judgment in favor of defendants and against plaintiffs on the design defect claim. The motion is DISMISSED AS MOOT to the extent defendants seek to exclude evidence of the alternative designs in regards to the design defect claim. Judgment shall be entered in accordance with this order.

guard in 1990 and [sic] subsequently was spurred by the enactment of products liability laws meant to eliminate corporate lethargy in development of better and safer products."